# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY D. WAFER,<br><br>                Plaintiff,<br><br>       v.<br><br>W. SUESBERRY, et al.,<br><br>                Defendants.<br>_____/ | CASE NO. 1:07-cv-00865-AWI-SKO PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S SECOND AMENDED COMPLAINT BE DISMISSED<br><br>(Doc. 17)<br><br>OBJECTIONS DUE WITHIN 30 DAYS |

Plaintiff Anthony D. Wafer ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is currently incarcerated at Centinela State Prison in Imperial, California. However, the events described in Plaintiff's complaint occurred while Plaintiff was incarcerated at the California State Prison in Corcoran, California ("CSP-Corcoran"). Plaintiff is suing under Section 1983 for the violation of his rights under the Eighth Amendment. Plaintiff names W. Suesberry (doctor), Yamaguchi (doctor), Greenough (doctor), McGinness (chief medical officer), M. Hodge-Wilkins (appeals examiner), N. Grannis (chief of inmate appeals), T. Kimura-Yip (staff service manager), Reynolds (doctor), K. Pacheco (registered nurse), John/Jane Doe #1 (medical staff), D. Adams (warden) and T. Hasadsir

///
///
///

1

(doctor) as defendants.[1]  For the reasons set forth below, the Court finds that Plaintiff's second amended complaint fails to state any claims upon which relief can be granted under Section 1983. The Court will recommend that Plaintiff's claims be dismissed, without leave to amend.

## I.        Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.

///

---

[1] Plaintiff refers to both a "McGinness" and a "McGuinness" in his complaint. The Court assumes that both references are to the same person. Similarly, "Hasadsir" is also spelled as "Hasadsri" in Plaintiff's complaint and the Court assumes that both references are to the same person.

Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

## II. Background

### A. Procedural Background

Plaintiff filed the original complaint in this action on June 18, 2007. (Doc. #1.) Plaintiff's original complaint was screened pursuant to 28 U.S.C. § 1915A on February 22, 2008. (Doc # 9.) The Court found that Plaintiff's original complaint failed to state any claims upon which relief can be granted and dismissed it, with leave to file an amended complaint. Plaintiff filed his first amended complaint on March 28, 2008. (Doc. #11.) The Court screened Plaintiff's first amended complaint on May 15, 2009. (Doc. #13.) The Court again dismissed Plaintiff's complaint for failing to state any claims and granted Plaintiff leave to file a second amended complaint. Plaintiff filed his second amended complaint on July 23, 2009. (Doc. #17.) This action proceeds on Plaintiff's second amended complaint.

### B. Factual Background

Plaintiff's second amended complaint raises claims under Section 1983 for Defendants' alleged deliberate indifference toward Plaintiff's medical needs. Plaintiff's claims concern the medical treatment he received for "keloids" that formed on the right side of Plaintiff's head.

On April 24, 2003, Defendant W. Suesberry removed a keloid on the right side of Plaintiff's head. The surgery was performed at Delano Regional Medical Center. Plaintiff complains that Suesberry also performed a "skingraft" on the "right front neck area" without Plaintiff's permission to remove "skin & flesh" from that area to be sewn onto the area where the keloid was removed. (2nd Am. Compl. 4, ECF No. 17.[2])

When Plaintiff returned to CSP-Corcoran after the surgery, Plaintiff was informed that Suesberry did not order any pain medication for Plaintiff. Plaintiff asked medical staff how to obtain treatment for the pain and swelling he was experiencing and medication to prevent further infection. Plaintiff was told that no medication had been prescribed. Plaintiff contends that Suesberry's failure

---

[2] Citations to Plaintiff's second amended complaint refer to the page numbers as electronically docketed. The page numbering used by Plaintiff differs from the page numbers as docketed.

to prescribe medication caused a second keloid to form.  Plaintiff alleges that Suesberry "knew the risk of possible harm to plaintiff if no follow up medical treatment was rendered . . . due to the complexity and type of surgery that was performed, as well as the sensitive location of the surgery areas."  (2nd Am. Compl 7:11-15, ECF No. 17.)

On April 30, 2003, Plaintiff was taken to Delano Regional Medical Center again to have his stitches removed.  Plaintiff asked Suesberry why pain medication, antibiotics, and other medication had not been prescribed.  Suesberry told Plaintiff that the medication should have been ordered the evening of the surgery.

On May 14, 2003, Plaintiff saw Suesberry again to have the stitches and "gauge" removed from his head.  Plaintiff again asked about medication and Suesberry told Plaintiff that he should have been receiving medication for the past ten days.  Plaintiff also asked why the "gauge" was "sewn into [his] skin . . . so that it could never changed[sic]. . . ."  (2nd Am. Compl. 8:2-4, ECF No. 17.)  Plaintiff complained that the medical staff at CSP-Corcoran would not take out the "gauge" because there was no order from Suesberry indicating that it should be removed.  Plaintiff further complained that it had "been given[sic] off a foul odor, as well as bleeding."  (2nd Am. Compl. 8:2-4, ECF No. 17.)  Suesberry told Plaintiff that "it takes time with these things" and that "[he was] sure everything will be just fine."  (2nd Am. Compl. 8:8-10, ECF No. 17.)  Suesberry told Plaintiff that he would order something for Plaintiff's pain, as well as ointment and antibiotics for the infections.  However, the medical staff at CSP-Corcoran told Plaintiff that nothing was ordered by Suesberry.

Various doctors informed Plaintiff about several deficiencies in the medical care he received.  On June 27, 2003, Plaintiff was told by Dr. Greaves that a second keloid began to form due to "lack of after care."  (2nd Am. Compl. 9:2-9:4, ECF No. 17.)  Plaintiff was also told by Dr. Abramowitz that the skin and flesh graft surgeries should not have used tissue taken from the "upper extremities."  (2nd Am. Compl. 9:10-11, ECF No. 17.)  Dr. Sanchez informed Plaintiff that Suesberry "screwed up" when performing the surgery to remove the keloid.  Suesberry saw Plaintiff again and applied "some sterile cream" and bandages and told Plaintiff that everything would be all right.

On August 12, 2003, Plaintiff filed several complaints about the improper medical treatment.  Plaintiff also saw Suesberry again, who provided Plaintiff with "a few shots of 'kenalog' a steroid

4

compound to possibly help keep down the growth of the keloids." (2nd Am. Compl. 10:22-25, ECF No. 17.) Plaintiff was scheduled to see a specialist because of the growth of two new keloids. Over the next several months, Plaintiff received x-rays and medical staff took samples of the fluids leaking from the keloids.

On March 18, 2005, Plaintiff was taken to Bakersfield Hospital for an appointment with Dr. Dean Davis. Davis told Plaintiff that he needed to see a specialist to reduce the recurrence of the keloids. Plaintiff was referred to see Dr. Sohaul Sarmicanic as well as a plastic surgeon for "beam radiation therapy." Plaintiff saw Davis again on February 23, 2006. Davis took pictures to document the growth of Plaintiff's keloids.

On March 27, 2006, Plaintiff was taken to the acute care hospital at CSP-Corcoran to remove the keloids. However, the surgery was canceled and Plaintiff was told that he would receive an appointment with a specialist to receive radiation therapy. Plaintiff requested medication, but no medication was provided.

On May 10, 2006, Plaintiff was taken to "Fresno U.M.C." and was seen by Defendant Yamaguchi. Yamaguchi informed Plaintiff that he would not perform surgery on Plaintiff because the doctors at CSP-Corcoran already had a treatment plan. Plaintiff complains that Yamaguchi later wrote a report that stated the surgery could not be performed because the keloids were likely to recur. Plaintiff complains that the later report was "totally contrary" to what Yamaguchi told Plaintiff. (2nd Am. Compl. 13:6-9, ECF No. 17.)

Plaintiff complains that Defendant Reynolds told Plaintiff that he had made several requests for Plaintiff to be seen by a specialist to receive surgery, but the surgery was never performed. On May 10, 2006, Reynolds told Plaintiff that "the doctor's visit to Fresno U.M.C. was to see if the prison could find a doctor who would be willing to do the surgery for less money due to the expensive nature of these types of surgeries. The two surgeries would have to take place, and that would cost a bit much. . . ." (2nd Am. Compl. 14:4-7, ECF No. 17.)

On August 2, 2006, Plaintiff was seen by Defendant Hasadsir. Hasadsir guaranteed that Plaintiff would see a specialist for evaluation of the keloids and he would submit Plaintiff's concerns to the medical board for review and approval. Plaintiff requested medication which Hasadsir did not

provide. A few months later, Hasadsir saw Plaintiff again but told Plaintiff there was nothing he could do. On December 1, 206, Hasadsir told Plaintiff that his medical records stated that Plaintiff was seen by a specialist outside the prison. When Plaintiff insisted on seeing the paperwork, Hasadsir requested that the prison guards remove Plaintiff from his office.

Plaintiff complains that John/Jane Doe #1 partially granted Plaintiff's administrative complaint requesting further medical treatment. John/Jane Doe #1 informed Plaintiff that he cannot dictate what treatment Plaintiff receives. Defendants McGinness, M. Hodge-Wilkins, and N. Grannis also reviewed Plaintiff's administrative complaint and agreed with Hasadsir's assessment of Plaintiff's need for medical treatment. Plaintiff complains that Defendant T. Kimura-Yip did nothing to assist Plaintiff despite "several calls" from Plaintiff's inmate labor supervisors about Plaintiff's pain, swelling and bleeding. Plaintiff complains that Defendant Greenough spoke with the Prison Law Office and told Brittany Gladden that "nothing medically could be done to permanently address the issue of keloids." (2nd Am. Compl. 22:6-8, ECF No. 17.) Greenough further stated that the treatment for keloids is a controversial issue and that it was difficult to find doctors who would operate after the recurrence of a keloid.

**III.    Discussion**

     **A.    Eighth Amendment Legal Standards**

Plaintiff claims that Defendants violated Plaintiff's rights under the Eighth Amendment through their deliberate indifference toward Plaintiff's serious medical needs. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's

necessities." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

"[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle, 429 U.S. at 105. In order to state an Eighth Amendment claim based on deficient medical treatment, a plaintiff must show: (1) a serious medical need; and (2) a deliberately indifferent response by the defendant. Conn v. City of Reno, 572 F.3d 1047, 1055 (9th Cir. 2009) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). A serious medical need is shown by alleging that the failure to treat the plaintiff's condition could result in further significant injury, or the unnecessary and wanton infliction of pain. Id. A deliberately indifferent response by the defendant is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. Id. In order to constitute deliberate indifference, there must be an objective risk of harm and the defendant must have subjective awareness of that harm. Id.

However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Isolated occurrences of neglect do not constitute deliberate indifference to serious medical needs. See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990).

Plaintiff's second amended complaint fails to set forth facts that plausibly support the conclusion that Defendants acted with deliberate indifference. The facts alleged demonstrate that, at most, Defendants acted negligently and their negligence caused Plaintiff to not receive his

7

medication and delayed his scheduled surgeries. However, the allegations of negligence do not amount to the type of deliberate disregard toward Plaintiff's well-being that constitutes cruel and unusual punishment under the Eighth Amendment.

### B. Claims Against Defendant Suesberry

Plaintiff alleges that Defendant Suesberry saw Plaintiff on numerous occasions. Suesberry performed Plaintiff's surgery and removed the keloid from Plaintiff's head. Plaintiff alleges facts that suggest that Suesberry "screwed up" the surgery, but Plaintiff alleges no facts that plausibly support the conclusion that Suesberry deliberately mishandled the surgery to expose Plaintiff to a risk of serious further injury. Plaintiff alleges that he never received the medications that Suesberry indicated that he ordered for Plaintiff and Suesberry knew that if Plaintiff did not receive those medications, Plaintiff would be exposed to a risk of further injury. However, nothing in Plaintiff's complaint suggests that Suesberry deliberately withheld the medications from Plaintiff in order to cause him pain and suffering. According to Plaintiff's complaint, Suesberry thought that Plaintiff was receiving his medications and expressed surprise when Plaintiff informed him that Plaintiff was not receiving his medications.

Plaintiff's allegations establish that Suesberry saw Plaintiff multiple times, listened to Plaintiff's complaints, and assured Plaintiff that he would be fine. Suesberry provided Plaintiff with shots of a steroid compound. Even accepting Plaintiff's allegations as true, Plaintiff has at most established that Suesberry was incompetent and negligent. Plaintiff's allegations of incompetence and negligence do not rise to the level of an Eighth Amendment violation and are not actionable under Section 1983.

### C. Claims Against Defendant Yamaguchi

Similarly, Plaintiff complains that Defendant Yamaguchi saw Plaintiff and refused to perform surgery, either because Yamaguchi did not want to interfere with CSP-Corcoran medical staff's course of treatment, or because Yamaguchi believed that surgery would be futile because the keloids were likely to recur. Yamaguchi's actions do not rise to the level of deliberate indifference merely because another doctor told Plaintiff that he was willing to perform surgery or radiation therapy to remove Plaintiff's keloids. Plaintiff has, at most, identified a difference of opinion between two

doctors. Even if Yamaguchi's diagnosis was incorrect, nothing in Plaintiff's complaint suggests that any misdiagnosis was more than a mere isolated incidence of negligence. Nothing in Plaintiff's complaint suggests that Yamaguchi deliberately refused to perform surgery knowing that it would expose Plaintiff to a risk of serious injury.

### D.  Claims Against Defendant Reynolds

Plaintiff's allegations with respect to Defendant Reynolds are unclear. Plaintiff alleges that Reynolds made several requests for Plaintiff to be seen by a specialist for radiation therapy. Reynolds also spoke with Plaintiff after Plaintiff saw Yamaguchi and told Plaintiff that he was taken to see Yamaguchi because radiation therapy was expensive. Plaintiff claims that the prison was looking for a doctor who would be willing to perform the radiation therapy for less money. The prison's attempt to save money did not violate Plaintiff's constitutional rights. Plaintiff was evaluated by Yamaguchi and Yamaguchi expressed the opinion that surgery was not necessary. Presumably, either Reynolds or some other prison official canceled Plaintiff's radiation therapy relying on Yamaguchi's evaluation. Nothing in Plaintiff's complaint suggests that Reynolds or any prison official knew that Yamaguchi's opinion was erroneous and relied on Yamaguchi's opinion in deliberate disregard toward a serious risk to Plaintiff.

### E.  Claims Against Other Defendants

Plaintiff's remaining claims are against prison officials who reviewed Plaintiff's administrative complaints or otherwise endorsed Yamaguchi's decision not to perform surgery. Plaintiff claims that these Defendants acted with deliberate indifference by failing to provide Plaintiff with further treatment. However, nothing in Plaintiff's complaint plausibly supports the conclusion that these Defendants acted with deliberate indifference.

Plaintiff's claims largely arose from his disagreement with the medical decisions made by his doctors. Plaintiff was of the opinion that he needed radiation therapy to remove the keloids and Yamaguchi rendered the opinion that surgery would be futile because the keloids would recur. Plaintiff has alleged no facts that support the conclusion that prison officials acted with deliberate indifference by affirming Yamaguchi's actions. Plaintiff merely points out that Yamaguchi's decision conflicted with Dr. Davis' recommendations and argues that Davis is a leading medical

1  doctor in his field of work. The facts alleged do not support the conclusion that the prison officials
2  who responded to Plaintiff's administrative complaints somehow knew that the medical decisions
3  rendered by Suesberry, Yamaguchi, and Reynolds were erroneous or that their failure to intervene
4  would expose Plaintiff to a serious risk of further injury.

5  Plaintiff alleges that Defendants Greenough and Kimura-Yip spoke with the Prison Law
6  Office and endorsed Yamaguchi's decision not to perform the surgery. Nothing in Plaintiff's
7  complaint suggests that Greenough or Kimura-Yip acted with deliberate indifference and it is unclear
8  how their comments to the Prison Law Office caused or contributed to Plaintiff's failure to receive
9  proper medical treatment. It is unclear what Defendant Pacheco did or failed to do that resulted in
10 Plaintiff suffering further injury. Thus, Plaintiff fails to state any claims for the violation of his
11 rights under the Eighth Amendment.

### F.   Dismissal Without Leave to Amend

Plaintiff's claims have been screened twice by the Court. On both occasions, Plaintiff was informed of the deficiencies in his claims and given the relevant standards for stating a claim under Section 1983. In its last screening order, Plaintiff was specifically informed that his factual allegations were not sufficient to support the conclusion that Defendants acted with deliberate indifference. (Order Dismissing Compl. With Leave To Amend 6:21-11:7, ECF No. 13.) The Court finds that Plaintiff's claims are not capable of being cured by granting further leave to amend. Accordingly, the Court will recommend that Plaintiff's complaint be dismissed without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2007) (recognizing longstanding rule that leave to amend should be granted even if no request to amend was made unless the court determines that the pleading could not possibly be cured by the allegation of other facts); Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)(dismissal with prejudice upheld where court had instructed plaintiff regarding deficiencies in prior order dismissing claim with leave to amend); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment).

///

///

IV. **Conclusion and Recommendation**

Plaintiff's second amended complaint fails to state any claims upon which relief can be granted under Section 1983. Plaintiff was twice provided with the opportunity to amend, and his second amended complaint failed to remedy the deficiencies in his claims. The court finds that the deficiencies with Plaintiff's claims are not curable by further amendment of his complaint. Accordingly, it is HEREBY RECOMMENDED that Plaintiff's second amended complaint be dismissed, without leave to amend, for failure to state a claim.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 16, 2010**            /s/ Sheila K. Oberto
                                UNITED STATES MAGISTRATE JUDGE