1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY D. WAFER, | CASE NO. 1:07-cv–00865-AWI-BAM PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS AND DEFENDANTS FOR FAILURE TO STATE A COGNIZABLE CLAIM |
| v. | |
| W. SUESBERRY, et al., | (ECF No. 17) |
| Defendants. | |
| _____/ | OBJECTIONS DUE WITHIN THIRTY DAYS |

## I.    Procedural History

Plaintiff Anthony D. Wafer is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action was filed on June 18, 2007.  On February 22, 2008, the complaint was dismissed, with leave to amend.  (ECF No. 9.)  On May 15, 2009, the first amended complaint was dismissed, with leave to amend, for failure to state a claim. (ECF No. 13.)  Following reassignment of this action to the undersigned, the Court vacated the previously issued findings and recommendations, and currently before the Court is the second amended complaint, filed July 23, 2009.  (ECF No. 17.)

## II.    Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at , 129 S. Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949; Moss, 572 F.3d at 969.

Further, under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955).

**III.   Second Amended Complaint Allegations**

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is incarcerated at California State Prison, Los Angeles County. At the time of the incidents alleged in the complaint, Plaintiff was housed at California State Prison, Corcoran ("CSP-Corcoran"). Plaintiff brings this action naming various medical providers and appeal officials alleging deliberate indifference to his medical needs in violation of the Eighth Amendment.

On April 24, 2003, Defendant Suesberry performed surgery to remove a keloid from the right side of Plaintiff's head. During the surgery a skin graft was performed. Plaintiff returned to CSP-

Corcoran and was informed that no pain medication had been prescribed for his pain and swelling. (Sec. Am. Compl. 4,[1] ECF No. 17.) Plaintiff alleges that a second keloid began to form due to not receiving proper medical treatment. (Id. at 7.)

On April 30, 2003, Plaintiff returned to see Defendant Suesberry to have his stitches removed. Plaintiff asked Defendant Suesberry why medication had not been ordered and Defendant Suesberry replied that medication should have been ordered the evening of surgery or the next morning. (Id.)

On May 14, 2003, Plaintiff once again saw Defendant Suesberry and asked why no medication had been ordered. (Id.) Defendant Suesberry informed Plaintiff that he should have been receiving medication from April 24 until May 4. (Id. at 7-8.) Plaintiff asked Defendant Suesberry why the dressing had been stitched to his head so it could not be changed. Defendant Suesberry replied that sometimes these things take time and that he was sure everything would be fine. (Id. at 8.)

Plaintiff advised Defendant Suesberry that he was experiencing pain in his head and neck area and the wound had a foul odor and was leaking blood. Defendant Suesberry told Plaintiff that he would prescribe something for the pain and an ointment and antibiotics for infection. When Plaintiff returned to CSP-Corcoran, he discovered that no medication had been ordered. For several months Plaintiff complained to staff at CSP-Corcoran that he was experiencing pain, swelling, and fluid leaking from the site of the surgery. (Id. at 8.)

On June 27, 2003, Plaintiff was seen by Dr. Greaves who referred Plaintiff back to Defendant Suesberry for a follow-up due to the formation of another keloid on Plaintiff's head and reformation of the original keloid that was removed. (Id.) Dr. Greaves informed Plaintiff that the lack of aftercare caused the reformation of the keloid and the formation of the new keloid. (Id. at 9.)

On July 17, 2003, Plaintiff was seen by Dr. Abramowitz, who observed severe swelling to Plaintiff's head and neck, as well as a foul odor. Dr. Abramowitz immediately prescribed

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

medication to Plaintiff and informed him to never let anyone do a skin graft in this manner again. Dr. Abramowitz told Plaintiff that due to the manner in which the surgery had been performed the scar that was left may be hard to remove. On August 1, 2003, Plaintiff was seen by Dr. Sanchez who advised Plaintiff that, 'the removal of the keloids would be a mess to rectify, especially due to the possibility of recurrence of these types of keloids." Dr. Sanchez also informed Plaintiff that whoever had performed the surgery had "screwed up." (Id.)

On August 12, 2003, Plaintiff filed an inmate appeal regarding not having received proper medical care. Plaintiff then contacted the Prison Law Office regarding the issue. On September 12, 2003, Plaintiff received a letter from the Prison Law Office stating they had sent a letter to the State of California Department of Justice and received a response stating that Plaintiff had properly healed and was receiving follow-ups at regular intervals. The letter also stated that Plaintiff did not receive pain medication after surgery because it was not ordered by the physician and they did not know why it had not been ordered. (Id. at 10.)

Plaintiff saw Defendant Suesberry again and was given "a few shots of 'kenalog' a steroid compound to possibly help keep down the growth of the keloids." (Id.) Plaintiff was advised by Defendant Suesberry and by the Chief Medical Officer that he would be seen by a specialist to see what could be done about the pain management and growth of the keloids. (Id. at 10-11.) Several months later, in January 2005, Plaintiff was taken to a medical facility to have x-rays completed and samples of the fluids taken to be examined. (Id. at 11.)

On March 18, 2005, Plaintiff was examined by Dr. Davis. Dr. Davis advised Plaintiff that a specialist was urgently needed to reduce the likelihood of the reoccurrence of the keloids and he would refer Plaintiff to a plastic surgeon for possible removal of the lesions followed by radiation therapy. Dr. Davis advised Plaintiff that if he did not have radiation therapy following the removal of the keloids it was highly likely they would reoccur. (Id.) Plaintiff saw Dr. Davis again on February 23, 2006. Dr. Davis took pictures and measurements to document the growth of the keloids. (Id. at 12.)

On March 27, 2006, Plaintiff was taken to have the keloids removed, but the surgery was cancelled because the pre-operative radiation treatments had not been performed. (Id.) Plaintiff

1  made another request for pain, swelling, and infection medication, but no medication was issued.

2  Defendant Reynolds made several physician's requests for Plaintiff to be seen by a specialist and to

3  receive pre-operative and post-operative radiation treatment. (Id. at 13-14.)  On May 10, 2006,

4  Plaintiff was seen by Defendant Yamaguchi who stated that he would not perform the surgery

5  because the prior treatment plan was not followed. (Id.) Defendant Yamaguchi later wrote a report

6  stating that the surgery could not be preformed due to the reoccurrences of these types of keloids.

7  (Id. at 12-13.)

8  　　　　On this same day, Plaintiff was seen by Defendant Reynolds who told Plaintiff that the visit

9  was to see if the prison could find a doctor who was willing to perform the surgery for less money

10  because the recommended treatment was too expensive.  Plaintiff requested medication for pain and

11  swelling, but Defendant Reynolds failed to order medication. (Id. at 14.)

12  　　　　On August 2, 2006, Plaintiff was seen by Defendant Hasadsir regarding his inmate appeal.

13  Defendant Hasadsir guaranteed that Plaintiff would be referred to a specialist for evaluation of the

14  keloids and that he would submit Plaintiff's complaints to the medical board for review and approval

15  for his surgery.  Defendant Hasadsir told Plaintiff that he would order medication for pain and

16  swelling, but no medication was ordered. (Id.)

17  　　　　Plaintiff saw Defendant Hasadsir again several months later.  Defendant Hasadsir told

18  Plaintiff that there was nothing he could do for Plaintiff in regards to the keloids and he refused to

19  prescribe medication for Plaintiff. (Id.) On December 1, 2006, Plaintiff saw Defendant Hasadir who

20  told Plaintiff that his medical records showed Plaintiff had seen a specialist outside the prison

21  regarding his keloids.  Plaintiff insisted this was not true.  Defendant Hasadir refused to let Plaintiff

22  see the paperwork and had guards remove Plaintiff from his office. (Id. at 15.)

23  　　　　On May 23, 2006, Defendant Doe partially granted Plaintiff's inmate appeal.  Defendant Doe

24  assumed that Plaintiff made demands as to the type of treatment to be provided.  Plaintiff made no

25  such demands, but merely requested the treatment recommended by the previous specialist.  Plaintiff

26  alleges that due to the harsh tone of the response to Plaintiff's appeal this individual was not

27  interested in following through to assure Plaintiff received proper medical treatment. (Id. at 16.)

28  At the second level of review, Defendant McGuinness partially granted Plaintiff's administrative

appeal. Defendant McGuinness agreed with Defendant Hasadir that there was a need for treatment. Plaintiff alleges that Defendant McGuinness as Chief Medical Officer was responsible to ensure that Plaintiff received the radiation therapy recommended to remove the keloids. Defendant McGuinness failed to follow through even though Plaintiff's attending physician, Defendant Hasadsri stated that medical treatment was needed. (Id. at 17.)

At the Director's Level of Review, Defendant Hodge-Wilkins denied Plaintiff's appeal in contradiction of every order and diagnosis previously in Plaintiff's medical record. Defendant Hodge-Wilkins stated that Corcoran medical staff were contacted . The information in Plaintiff's medical file revealed that consultation services were initiated by Defendant Hasadsri and approved. Prior to surgery, Plaintiff was to have received radiation therapy but this was never scheduled. Plaintiff alleges his request for treatment was denied and he was prevented Plaintiff from receiving proper medical care. (Id. at 18.)

Plaintiff contends that Defendant Grannis had a duty as Chief of the Inmate Appeals Branch to apply policy and procedures. Plaintiff's complaint was submitted with the majority of orders by attending physicians. Defendant Grannis should have implemented policies that were already in place . Plaintiff alleges that Defendant Grannis violated the Equal Protection Clause by failing to do so and was deliberately indifferent to Plaintiff's serious medical need by denying Plaintiff's appeal for no apparent reason. (Id. at 19.)

Defendant Kimura-Yip is Staff Services Manager of the Clinical Programs Risk Management Unit and has done nothing to assist Plaintiff with his health care services. One of Plaintiff's inmate labor supervisor's contacted Defendant Kimura-Yip's Office due to the pain, swelling, and bleeding which interfered with Plaintiff's work duties. No one returned any of the calls made to the office. (Id.)

The Prison Law Office sent a request to which Defendant Kimura-Yip responded, "no, Mr. Wafer has not received any radiation treatments, nor surgery, because Dr. Davies' [sic] (UCM-Florence Wheeler Cancer Center) recommendation is for Mr. Wafer to be examined and evaluated by a plastic surgeon. The radiation treatments will only be needed if Mr. Wafer is a candidate for surgery, which Dr. Yamaguchi (UMC Wound Care Clinic) did not recommend because of the

reoccurrence of the keloids." (<u>Id.</u> at 20.)  In response to the request of what was being done for Plaintiff's pain, she responded that Plaintiff had been prescribed acetaminophen, 325 m.g. twice a day as needed for pain.  (<u>Id.</u>)

In February 2007, Defendant Greenough spoke with the Prison Law Office about the issue of keloids.  He explained that the treatment of keloids is a controversial issue and that it is difficult to find a doctor that will operate on a patient once a keloid reoccurs.  Plaintiff alleges that this statement is simply not true.  Plaintiff claims that Dr. Davis' letter proves that all prison officials had to do was make an appointment with a specialist and this was never done. (<u>Id.</u> at 22.)

Plaintiff's second amended complaint states a cognizable claim against Defendants Suesberry, Reynolds, and Hasadsir for failure to prescribe medication to treat Plaintiff's claims of pain, swelling, and infection, but fails to state any other cognizable claims for relief.  Plaintiff's previous complaints have been dismissed, with leave to amend, with direction by the Court.  Plaintiff has now filed three complaints without curing the deficiencies in his complaint, therefore the Court recommends that some of Plaintiff's claims be dismissed with prejudice as discussed below. However, the Court finds that Plaintiff may be able to state a cognizable claim based upon the failure to provide radiation therapy prior to his surgical appointment on March 27, 2006.  Accordingly, the Court shall recommend that Plaintiff be granted one final opportunity to file an amended complaint to cure the deficiencies addressed below.

**IV.   <u>Discussion</u>**

   **A.   <u>Deliberate Indifference to Serious Medical Needs</u>**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976)).  The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  <u>Jett</u>, 439 F.3d at 1096.

Deliberate indifference is shown where the official is aware of a serious medical need and

1   fails to adequately respond.  Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1018 (9th Cir.

2   2010).  "Deliberate indifference is a high legal standard."  Simmons, 609 F.3d at 1019; Toguchi v.

3   Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  The prison official must be aware of facts from which

4   he could make an inference that "a substantial risk of serious harm exists" and he must make the

5   inference.  Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994).

6                **1.      Objective Element - Serious Medical Need**

7          The existence of an injury that a reasonable doctor would find important and worthy of

8   comment or treatment, the presence of a medical condition that significantly affects an individual's

9   daily activities, and the existence of chronic or substantial pain are indications of a serious medical

10  need.  Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (citing McGuckin v. Smith, 974 F.2d

11  1050, 1059-60 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d

12  1133, 1136 (9th Cir. 1997) (en banc)) (quotation marks omitted); Doty v. County of Lassen, 37 F.3d

13  540, 546 n.3 (9th Cir. 1994).  While a keloid itself would not appear to be a serious medical need,

14  based upon Plaintiff's allegation that the surgery on the keloid caused pain, seeping, a foul order, and

15  infection, the Court finds at the pleading stage that Plaintiff sufficiently alleges facts to show for at

16  least some period alleged in the complaint he had a serious medical condition.

17              **2.      Subjective Element - Deliberate Indifference**

18                  **a.      Defendant Suesberry**

19         Plaintiff's allegations that he informed Defendant Suesberry that he had not been prescribed

20  medication following surgery, and Defendant Suesberry failed to prescribe medication for pain and

21  antibiotics which resulted in Plaintiff getting an infection is sufficient to state a cognizable claim.

22         However, to the extent the Plaintiff alleges deliberate indifference due to the removal of the

23  keloid by Defendant Suesberry, the complaint fails to state a claim.  While Plaintiff alleges that

24  Defendant Suesberry used the wrong tissue for the skin graft and sutured the dressing to the wound

25  so it could not be changed, this alleges no more than negligence or medical malpractice that is

26  insufficient to rise to the level of deliberate indifference.  Broughton v. Cutter Laboratories, 622 F.2d

27  458, 460 (9th Cir. 1980); Toguchi, 391 F.3d at 1057.  "Medical malpractice does not become a

28  constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106, 97 S. Ct.

at 292.

Additionally, while Plaintiff claims that his keloids reoccurred due to inadequate post operative treatment by Defendant Suesberry, there are no factual allegations to show that Defendant Suesberry was aware that Plaintiff was at a risk of redeveloping keloids and failed to act. Plaintiff was seen for regular post operative visits and received steroid injections to prevent the regrowth of the keloid. The statements of the medical providers set forth by Plaintiff in his second amended complaint show that keloids are highly likely to recur after removal. Plaintiff fails to state a cognizable claim for deliberate indifference due to the surgical removal of his keloids by Defendant Suesberry. Plaintiff has previously been granted leave to amend this claim, with direction from the Court and has been unable to correct the deficiencies of his claim. The Court recommends that Plaintiff's Eighth Amendment claim against Defendant Suesberry based upon his alleged inadequate performance of the surgery on April 24, 2003, and aftercare to prevent the regrowth of the keloids be dismissed with prejudice.

### b.   Post Surgical Treatment

The Court is not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992 (9th Cir. 2010). The Court notes that numerous of Plaintiff's allegations are contradicted by the exhibits that are incorporated by reference to his complaint, or by the statements made by medical personnel as set forth by Plaintiff. For example, Plaintiff alleges that he did not receive treatment and did not get referred to a specialist, however, the allegations in the second amended complaint demonstrate that he was treated by physicians within the prison system and by providers outside the prison system who gave differing opinions on whether to treat and how to treat Plaintiff's keloid.

After the surgery to remove the keloid was performed by Defendant Suesberry at Delano Regional Medical Center on April 24, 2003, Plaintiff was seen by Defendant Suesberry for follow-up appointments on April 30, 2003, and May 14, 2003. (ECF No. 17 at 4, 7-8.) Plaintiff was also treated by medical personnel at the prison during this time period. On June 27, 2003, Plaintiff was

seen by Dr. Grieves who noted the formation of a new keloid and referred Plaintiff back to Defendant Suesberry. (Id. at 8-9.) On July 17, 2003, Plaintiff was seen by Dr. Abramowitz who informed Plaintiff that the scar may be hard to get rid of. Plaintiff saw Dr. Sanchez on August 1, 2003, who informed him that the removal of the keloid would be a mess to rectify due to the possibility of reoccurrences of this type of keloid. (Id. at 9.)

In January 2005, Plaintiff received x-rays and a sample of the fluids from the keloid was examined. On March 18, 2005, Plaintiff was examined at Bakersfield Hospital by Dr. Davis who advised that a plastic surgeon might be able to remove the keloids and follow-up treatment with radiation therapy might be successful in decreasing the likelihood of recurrence, and that without radiation therapy it was highly likely the keloids would reoccur. (Id. at 10.)

Plaintiff was scheduled for surgery on March 27, 2006. After Plaintiff had begun to be prepped for surgery, the surgery was cancelled. (Id. at 11.) On May 10, 2006, Defendant Yamaguchi evaluated Plaintiff and submitted a report stating that the surgery could not be performed without the reoccurrence of the keloid. (Id. at 11-12.)

Plaintiff appears to imply that Dr. Davis stated that the surgery could be successfully performed by a plastic surgeon and radiation therapy would be highly successful. The report referred to by Plaintiff states:

> I plan to refer the patient to be seen by Schaul Sarmicanic, M.D. for evaluation of plastic surgical resection. Care must be taken to avoid additional trauma to tissue. Following surgery these lesions are best treated with external beam radiation therapy for approximately 3-7 fractions. This has been shown to markedly reduce the likelihood of reoccurrence. Arrangements will be made to request for an evaluation by Schaul Sarmicanic, M.D. or other plastic surgical specialist for possible removal of these lesions followed by external beam radiation therapy. If surgical resection is not followed by radiation therapy it is very likely these lesions will only recur with due haste.[2]

(First Am. Compl. 48, ECF No. 11.) Contrary to Plaintiff's allegation, Dr. Davis did not state that the keloids could be successfully removed, but recommended that Plaintiff be referred to a plastic surgeon for evaluation on whether the keloids were removable. Additionally, the report does not state there is a high level of success with the procedure, but that the procedure markedly reduces the

---

[2] The Court shall incorporate by reference Dr. Davis' report, which was referred to in his second amended complaint. The report was attached as an exhibit to the first amended complaint.

1  likelihood of reoccurrence.

2        This is clearly a case that involves a difference of difference of opinion between medical

3  providers regarding treatment which does not amount to deliberate indifference.  Sanchez v. Vild,

4  891 F.2d 240, 242 (9th Cir. 1989).  Here, Dr. Davis recommended that removal by a plastic surgeon

5  and use of radiation therapy might be successful in retarding the regrowth of the keloids.

6        Plaintiff was scheduled for surgery to remove the keloids and the surgery was cancelled after

7  he had begun to be prepped for surgery.  Plaintiff was referred to Defendant Yamaguchi to determine

8  if surgery was appropriate.  Defendant Yamaguchi examined Plaintiff and found that the surgery

9  could not be performed without the occurrence of the keloid.  Finally, Plaintiff alleges that Defendant

10  Greenough's statements that the treatment of keloids is a controversial issue and that it is difficult

11  to find a doctor that will operate on a patient once a keloid reoccurs are untrue.  However, the

12  evidence before the Court contradicts Plaintiff's allegation.  The statements of the medical providers

13  shows that keloids are difficult to treat and likely to recur if they are removed.

14                        **i.**   **Defendant Yamaguchi**

15        Plaintiff alleges that he was seen by Defendant Yamaguchi on May 10, 2006, who informed

16  him that he would not do this surgery because the prison had a treatment plan that was not followed.

17  Defendant Yamaguchi then filed a report stating the surgery could not be done due to the

18  reoccurrence of these types of keloids.  Plaintiff states that Defendant Yamaguchi should just have

19  referred him back to prison medical staff for review, instead he wrote a report that prison medical

20  staff used to deny Plaintiff treatment.  (ECF No. 17 at 13.)

21        Plaintiff was referred to Defendant Yamaguchi shortly after the surgery to remove his keloids

22  was cancelled.  The purpose of the referral was to obtain an opinion on whether Plaintiff's keloids

23  could be removed.  The fact that Defendant Yamaguchi's recommendation differed from the

24  recommendation of Dr. Davis does not amount to deliberate indifference.  Sanchez v. Vild, 891 F.2d

25  240, 242 (9th Cir. 1989).  Plaintiff fails to set forth factual allegations to establish that Defendant

26  Yamaguchi  acted  with  the  requisite  state  of  mind  for  deliberate  indifference.   Plaintiff's

27  disagreement with Defendant Yamaguchi's medical opinion is insufficient to state a cognizable

28  claim.  The Court finds that this claim is unable to be cured by amendment and recommends it be

dismissed, with prejudice.

### ii.   **Defendant Reynolds**

According to Plaintiff's second amended complaint, Defendant Reynolds submitted physician requests for Plaintiff to be seen by a specialist so that pre-operative and post-operative radiation therapy could be completed before surgery and the recommendation was granted. (ECF No. 17, at 14-15.) There are no facts alleged to show that Defendant Reynolds was responsible for arranging the treatment or was aware that it was not provided until after the fact. Plaintiff fails to state a cognizable claim against Defendant Reynolds based upon the failure to receive radiation therapy prior to his surgery scheduled March 27, 2006.

Plaintiff alleges that Defendant Reynolds informed him that he was being referred to Defendant Yamaguchi to see if there was a doctor who would perform the surgery for less money because it was going to be too expensive, (ECF No. 17 at 14), however the allegations contained in the complaint contradict Plaintiff's claim. Plaintiff saw Defendant Yamaguchi after his scheduled surgery was cancelled. The surgery was cancelled after Plaintiff had begun to be prepped for surgery because he had not received preoperative radiation treatments. The fact that the surgery was cancelled after Plaintiff was at the facility and preoperative preparations had begun indicates that the surgery was cancelled due to medical reasons, rather than the cost of proceeding with the surgery. Shortly after this Plaintiff was referred to Defendant Yamaguchi to determine if surgery was recommended.

To the extent that Plaintiff alleges that Defendant Reynolds told him that prison officials were attempting to find out if a surgeon would perform the surgery for less money due to the expensive nature of these types of surgeries, this fails to state a cognizable claim. While Plaintiff may be able to state a claim based upon the refusal to provide necessary medical care due to cost, Plaintiff fails to link any named defendant to a decision to deny care based on the cost.

Plaintiff's allegation that he informed Defendant Reynolds that he was experiencing pain, swelling and infection, and Defendant Reynolds refused to provide medication is sufficient to state a cognizable claim.

///

### iii.    **Defendant Hasadsir**

Plaintiff alleges that he saw Defendant Hasadsir on August 2, 2006 in response to his inmate appeal.  Defendant Hasadsir answered Plaintiff's inmate appeal and "guaranteed" that Plaintiff would get to see a specialist and that the request for surgery would be submitted.  Plaintiff references the appeal response by Defendant Hasadsri in support of his claims.  (ECF No. 17 at 14).  The Court shall incorporate by reference the inmate appeal which was filed with Plaintiff's first amended complaint.  In response to Plaintiff's appeal Defendant Hasadsri responded:

> You have keloids at [right] side of upper chin and behind [right] ear.  You want the keloids to be treated with radiation and surgery.  You also want money compensation.  Because the treatment of your keloids is for cosmetic [sic] therefore it is subjected to approval by CDCR manager.  The monetary compensation is not authorized by the medical department.

(ECF No. 11 at 57.)

Plaintiff claims that when he saw Defendant Hasadsir again, Defendant Hasadsir stated there was nothing he could do for Plaintiff.  On December 1, 2006, Plaintiff saw Defendant Hasdasir and a confrontation occurred because Defendant Hasadsir alleged that Plaintiff had been to see an outside specialist and Plaintiff stated he had not.  Defendant Hasadsir had Plaintiff removed from his office.  Plaintiff contends that Defendant Hasadsir was responsible for ensuring that Plaintiff received proper treatment and failed to do so.  (Id. at 15.)

Defendant Hasadsir informed Plaintiff that he would have to submit Plaintiff's request to the CDCR manager because the requested surgery was for cosmetic reasons.  Defendant Hasadsir would have been aware of Defendant Yamaguchi's report stating that surgery was not recommended due to the likelihood of reoccurrence of the keloids.  Plaintiff's disagreement with the treatment recommendation is insufficient to state a cognizable claim.  Defendant Hasadsir had submitted Plaintiff's request for services and it was denied based upon the medical recommendation of Defendant Yamaguchi.  Plaintiff fails to state a cognizable claim that Defendant Hasadsir acted with the requisite mental state of mind to establish deliberate indifference due to Plaintiff's request for surgery or referral to a specialist.

Plaintiff's allegations that he informed Defendant Hasadsir that he needed medication for pain and swelling and Defendant Hasadsir refused to provide medication is sufficient to state a

cognizable claim.

### iv.    **Defendants Doe**

Plaintiff alleges that Defendant Doe processed his appeal at the informal level of review and Defendant Pacheco was deliberately indifferent by reviewing his medical file in the Medical Appeals Office.  (ECF No. 17 at 3, 15.)  Plaintiff contends that the harsh tone used by Defendant Doe in responding to his inmate appeal shows that Defendant Doe "was never interested in following through to assure that plaintiff received proper medical treatment from the CSP-Corcoran's medical staff." (Id. at 16.)  Plaintiff's inmate appeal was partially granted by Defendant Doe stating:

> Partially granted.  (In regards to the action requested #4).  You have been seen and will continue to be seen by multiple physicians regarding this matter.  However, you do not dictate who delivers your medical care or the proper medical treatment.  Your physicians will make the medical recommendations and decisions.

(ECF No. 11 at 56.)  Plaintiff's request number 4 was to be provided with proper and adequate radiation therapy and keloid surgery.  (Id.)  Plaintiff's request for radiation therapy and removal of the keloid is a difference of opinion between him and his medical providers that is insufficient to state a cognizable claim.  Franklin v. Oregon, 662 F.2d 1337, 1355 (9th Cir. 1981);  Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970).

The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct.  "Only persons who cause or participate in the violations are responsible.  Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005) accord George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); see Owens v. Hinsley, 635 F.3d 950, 953 (7 th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create liberty interests protected by the Due Process Clause, and so the alleged mishandling of [an inmate's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim.").

While Plaintiff alleges that he had a complete deprivation of medical treatment for over three years, in this instance Defendant Doe would have reviewed Plaintiff's medical records which showed that Plaintiff had been examined by numerous prison medical providers and had received specialist

consultations which resulted in differing medical opinions regarding the treatment of his medical condition, the most recent being that surgery was not recommended for his medical condition. Plaintiff fails to state a cognizable claim that Defendant Doe acted with deliberate indifference by partially denying his appeal and informing him that medical recommendations and decisions were made by medical personnel. The Court finds that Plaintiff's claim against Defendant Doe is unable to be cured by amendment and recommends that it be dismissed, with prejudice.

### v.   Defendant Pacheco

Plaintiff claims that Defendant Pacheco reviewed his medical file which reflected that a Request for Consultation Services approved radiation services that were never provided. The Director's Level response states:

> The California State Prison, Corcoran (COR) medical staff were contacted at the Director's Level of Review. Review of the appellant's medical file by K. Pacheco of the Medical Appeals Office, reflects information that the Request for Consultation Services form initiated by Dr. Hasadsri was approved.; however, it was determined that prior to receiving treatment for his keloids the appellant needs radiation. He was scheduled for radiation, however, the radiation was not completed, therefore, the surgery was not performed. Medical staff will dictate further treatment.

(ECF No. 11 at 62.) Plaintiff fails to show that Defendant Pacheco acted with the requisite mental state by providing a history of his medical treatment to the Director's Level of Review. To the extent that Plaintiff attempts to allege a claim based upon the failure to provide radiation treatment prior to his March 27, 2006 surgery, Defendant Pacheco reviewed the medical records after the fact and at that time the surgery had been cancelled, Plaintiff had been referred to a specialist, and the specialist found surgery was not recommended. Defendant Pacheco did not contribute to any alleged constitutional violation by providing a summary of his medical treatment to the officials reviewing his inmate appeal. The Court finds that Plaintiff's claim against Pacheco is unable to be cured by amendment and recommends that it be dismissed, with prejudice.

### vi.   Defendant McGuinness

Plaintiff alleges that Defendant McGuinness, as Chief Medical Officer, was responsible for promulgating and implementing medical treatment policies. (ECF No. 17 at 16.) To the extent that Plaintiff attempts to state a claim based upon supervisory liability, Government officials may not be held liable for the actions of their subordinates under a theory of *respondeat superior*. Iqbal, 129

S. Ct. at 1948.  Since a government official cannot be held liable under a theory of vicarious liability for section 1983 actions, Plaintiff must plead that the official has violated the Constitution through his own individual actions.  Id. at 1948.

Plaintiff alleges that Defendant Hasadsri granted his request for treatment and Defendant McGuinness partially granted the administrative appeal, but Defendant McGuinness failed to ensure that Plaintiff received treatment.  (ECF No. 17 at 17.)  While Plaintiff states that Defendant Hasadsri granted his request for treatment, the response by Defendant Hasadsri stated that the procedure was cosmetic and approval would be needed by the CDCR.  Defendant McGuinness' response stated "this appeal is being partially granted for the services as approved by the Yard Primary Care Physician at the Second Level of Review."  (ECF No. 11 at 60.)  Contrary to Plaintiff's assertions, Defendant Hasadsri did not approve radiation treatment and surgery.

Further to the extent that Plaintiff attempts to allege a claim based upon the approval of radiation and surgery prior to March 27, 2006, it is clear that Plaintiff's medical condition had changed since he had been approved for radiation and surgery.  The most current specialist recommendation was that Plaintiff was not a candidate for surgery.  Plaintiff has failed to set forth a cognizable claim that Defendant McGuinness was deliberately indifferent in partially granting Plaintiff's inmate appeal.

### vi.    Defendants Hodge-Wilkins and Grannis

Plaintiff's official capacity claim against Defendant Grannis for failing to apply policies and procedures that govern inmate appeals fails.  "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."  Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).  A suit brought against prison officials in their official capacity is generally equivalent to a suit against the prison itself.  McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986).  In order to state a claim Plaintiff must show that Defendant Grannis personally participated in the violation of his constitutional rights.  Jones, 297 F.3d at 934.

The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983.  Buckley v.

Barlow, 997 F.2d 494, 495 (8th Cir. 1993).  Accordingly, in order to state a claim Plaintiff must establish that appeals reviewers were aware that a serious medical need existed and failed to adequately respond.  Simmons, 609 F.3d at 1018.  Plaintiff alleges that Defendants Hodge-Wilkins and Grannis were deliberately indifferent by denying his inmate appeal at the Director's Level of Review.  (ECF No. 17 at 17-19.)  While it is Plaintiff's belief that the proper treatment for his keloids is surgery with preoperative and postoperative radiation treatments, the medical providers disagree.  At the time of Director's Level Appeal Plaintiff had been referred to Defendant Yamaguchi who recommended against surgery.  Plaintiff fails to set forth factual allegations to establish that Defendants Hodge-Wilkins and Grannis were deliberately indifferent in responding to his appeal.

Additionally, non-medical appeal reviewers "who confirm that a prisoner is receiving some medical treatment 'will generally be justified in believing that the prisoner is in capable hands.'" Pogue v. Igbinosa, No. 1:07-cv-01577-GMS, 2012 WL 603230, * 9 (E.D. Cal. Feb. 23, 2012) (quoting Wilson v. Woodford, No. 1:05-cv-00560-OWW-SMS, 2009 WL 839921, * 7 (E.D. Cal. Mar. 30, 2009)); Greeno, 414 F.3d at 656.  In this instance, Plaintiff had been seen by numerous medical providers over a period of several years and Plaintiff was requesting that prison officials follow the specific recommendation of Defendant Davis.  As previously stated, Plaintiff fails to state a claim based upon the difference of opinion between medical providers regarding treatment. Sanchez, 891 F.2d at 242.  The Court finds that Plaintiff's claims against Defendants Hodge-Wilkins and Grannis are unable to be cured by amendment and recommends that they be dismissed, with prejudice.

### vii.   Defendant Kimura-Yip

Plaintiff alleges that Defendant Kimura-Yip was deliberately indifferent because his work supervisor called her office and did not receive return phone calls and she sent responses to the Prison Law Office and was aware that Plaintiff was not receiving radiation and surgery.  (ECF No. 19-20.)  According to the second amended complaint, Defendant Kimura-Yip responded to a request for information from the Prison Law Office.  The Prison Law Office asked if Plaintiff had received radiation therapy and if he was scheduled for surgery.  Defendant Kimura-Yip responded, "no, Mr.

Wafer has not received any radiation treatments, nor surgery because Dr. Davies' [sic] (UMC-Florence Wheeler Cancer Center) recommendation is for Mr. Wafer to be examined by a plastic surgeon. The radiation treatments will only be needed if Mr. Wafer is a candidate for surgery, which Dr. Yamaguchi (UMC Wound Care Clinic) did not recommend because of the reoccurrence of the keloids." (Id. at 20.) In response to the request for a description of the treatment and pain management plan, Defendant Kimura-Yip responded, "Mr. Wafer has been prescribed with acetaminophen 325mg two (2) tablets twice a day, as needed for pain." (Id.)

Defendant Kimura-Yip was aware that Plaintiff had been referred for radiation therapy if surgery was recommended. However, she was also aware that Defendant Yamaguchi had found that surgery was not recommended and no surgery was scheduled. Additionally, Defendant Kimura-Yip knew that Plaintiff had been prescribed medication for pain by his treating physician. Based upon these facts, Plaintiff fails to state a cognizable claim that Defendant Kimura-Yip was aware of a serious medical need and failed to respond. The Court finds that Plaintiff's claims against Defendant Kimura-Yip are unable to be cured by amendment and they should be dismissed, with prejudice.

### viii.   Defendant Greenough

Plaintiff alleges that Defendant Greenough was deliberately indifferent when he informed the Prison Law Office that nothing medically could be done to permanently address the issue of keloids, explained that the treatment was controversial, and it was difficult to find someone to operate after a keloid reoccurs. The Court notes that while Plaintiff states that this is untrue, he was seen by multiple medical providers and the complaint fails to identify a single physician who agreed to operate to remove the keloids after they reoccurred. The one attempt to have surgery to remove the keloids was cancelled, after which Plaintiff was referred to a specialist who opined that surgery was not recommended.

While Plaintiff argues that Dr. Davis recommendation should have been followed, the recommendation was for a follow-up by a specialist to determine if surgery was appropriate. Plaintiff received a consultation with Defendant Yamaguchi who found that surgery was not appropriate. Defendant Greenough's statements are also supported by the statements of medical providers as alleged in the second amended complaint. Plaintiff was told by Dr. Abramowitz that

the keloids may be hard to remove.  Dr. Sanchez advised Plaintiff that "the removal of the keloids would be a mess to rectify, especially due to the possibility of recurrence of these types of keloids." Plaintiff fails to state a claim based upon his disagreement with the opinion of Defendant Greenough. The Court finds that Plaintiff's claim against Defendant Greenough cannot be cured by amendment and should be dismissed, with prejudice.

### B.   Equal Protection

Plaintiff states that the failure to provide proper treatment violates the Equal Protection Clause. (ECF No. 17 at 18.)  The Equal Protection Clause requires that all persons who are similarly situated should be treated alike.  Lee v. City of Los Angeles, 250 F.3d 668, 686 (2001);  City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  Plaintiff fails to set forth factual allegations to show that any defendant intentionally discriminated against him based on his membership in a protected class, Lee, 250 F.3d at 686; Barren v. Harrington, 152 F.3d 1193, 1194 (1998), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose,  Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (2005);  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Plaintiff fails to state a cognizable equal protection claim.

### C.   Declaratory Relief

In addition to money damages, Plaintiff seeks a declaration that his rights were violated.  "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest."  Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."  United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).  In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated.  Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary, and Plaintiff's request for declaratory relief should be dismissed, without leave to amend.

///

## V.    Motion for Appointment of Attorney

Plaintiff has requested the appointment of counsel.  The United States Supreme Court has ruled that district courts lack authority to require counsel to represent indigent prisoners in § 1983 cases.  Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298, 109 S.Ct. 1814, 1816 (1989).  In certain exceptional circumstances, the court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1).  Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997).  Without a reasonable method of securing and compensating counsel, this court will seek volunteer counsel only in the most serious and exceptional cases.

In the present case, the Court does not find the required exceptional circumstances.  See Rand, 113 F.3d at 1525.  Even if it is assumed that Plaintiff is not well versed in the law and that he has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional. This Court is faced with similar cases almost daily.  Further, at this early stage of the proceedings the court cannot find that Plaintiff is likely to succeed on the merits.  Also, having reviewed Plaintiff's second amended complaint, the Court does not find that Plaintiff is unable to adequate articulate his claims.  Therefore, Plaintiff's request for the appointment of counsel should be denied.

## VI.    Motion for Appointment of Special Master

Plaintiff requests the appointment of a special master as authorized by Federal Rule of Civil Procedure 53.  Rule 53 allows for the appointment of a special master where 1) the parties consent to the appointment; 2) there is some exceptional circumstance that needs to be performed; or 3) to address pretrial and posttrial matters that cannot be effective and timely addressed by the court. Fed. R. Civ. P. 53(a).  Plaintiff fails to make a showing that the appointment of a special master is necessary in these proceedings, and his motion for the appointment of a special master should be denied.

## VI.    Conclusion and Recommendation

The Court finds that Plaintiff's complaint states a claim for deliberate indifference in violation of the Eighth Amendment against Defendants Suesberry, Reynolds, and Hasadsir for failure to provide medication for pain, swelling, and infection, but fails to state any claims upon which relief can be granted under § 1983.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to

amend 'shall be freely given when justice so requires.'"  In addition, "[l]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect."  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citations omitted).  However, in this action Plaintiff has been granted prior opportunities to amend the complaint, with guidance by the Court.  Plaintiff has now filed three complaints without stating a claim against the remaining defendants.  The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted, except as discussed above.  28 U.S.C. § 1915(e)(2)(B)(ii); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Accordingly, based on the foregoing, the Court  HEREBY RECOMMENDS that:

1.   Plaintiff's deliberate indifference claim against Defendant Suesberry based upon his alleged inadequate performance of the surgery on April 24, 2003, and treatment to prevent the reoccurrence of the keloids be dismissed, with prejudice for failure to state a claim;

2.   Plaintiff's Eighth Amendment claims against Defendants Yamaguchi, Pacheco, Greenough, Kimura-Yip, Grannis, Hodges-Wilkins, and Jane Doe be dismissed, with prejudice, for failure to state a claim;

3.   Plaintiff's official capacity claims and request for declaratory relief be dismissed, without leave to amend;

4.   Plaintiff's motion for appointment of an attorney be denied;

5.   Plaintiff's motion for appointment of a special master be denied; and

6.   Plaintiff be ordered to either:

a.   File an amended complaint curing the deficiencies identified by the Court in this order, or

b.   Notify the Court in writing that he does not wish to file an amended complaint and is willing to proceed only against Defendants Suesberry, Reynolds, and Hasadsir for failure to provide medication in violation of the

1   Eighth Amendment.[3]

2   These findings and recommendations will be submitted to the United States District Judge

3   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30)

4   days after being served with these findings and recommendations, Plaintiff may file written

5   objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

6   Findings and Recommendations."   Plaintiff is advised that failure to file objections within the

7   specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d

8   1153 (9th Cir. 1991).

9

10   IT IS SO ORDERED.

11   **Dated:    July 27, 2012             /s/ Barbara A. McAuliffe**
                                    UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27       [3]Plaintiff is advised that this findings and recommendations does grant him leave to file an amended
     complaint.  Once an order issues, Plaintiff will be advised if he is granted leave to file an amended complaint and

28   given a time frame in which to comply.

22