UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY D. WAFER,<br><br>  Plaintiff,<br><br>  v.<br><br>W. SUESBERRY, et al.,<br><br>  Defendants. | Case No.: 1:07-cv-00865-AWI-BAM PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR JUDGMENT ON THE PLEADINGS BY DEFENDANT SUESBERRY<br><br>(ECF No. 109)<br><br>FOURTEEN-DAY DEADLINE |

**I.   Background**

Plaintiff Anthony D. Wafer ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff constructively filed this action on June 14, 2007.[1]  The matter proceeds only on Plaintiff's claim against Defendant Suesberry for failure to provide medication in violation of the Eighth Amendment.  Defendant Suesberry answered the second amended complaint on July 23, 2014.  (ECF No. 101.)

On September 23, 2014, Defendant Suesberry filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on the ground that Plaintiff's claims against Defendant Suesberry are time-barred by the applicable statute of limitations.  (ECF No. 109.)  Plaintiff

---

[1] Pursuant to his proof of service, Plaintiff submitted the original complaint for forwarding to the court clerk on June 14, 2007.  *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) (prison mailbox rule applies to section 1983 actions).

1

opposed the motion on May 12, 2015, and Defendant Suesberry replied on May 18, 2015. (ECF Nos. 120, 121.) The motion is deemed submitted on the papers. Local Rule 230(l).

## II. Motion for Judgment on the Pleadings

### A. Legal Standard

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "If . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

"Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted). The Court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming*, 581 F.3d at 925.

### B. Summary of Relevant Complaint Allegations

In his second amended complaint, Plaintiff alleged as follows:

On April 24, 2003, W. Suesberry, MD, performed "excision surgery" on plaintiff to remove an "keloid" formation from the right side of plaintiff's head, behind his right ear. During this procedure, Suesberry performed an "skingraft" on the right front neck area of plaintiff, without plaintiff's permission, to remove "skin & flesh" from that area to be sewn into the area on plaintiff's head, behind the right ear. Upon being released from the [outpatient] surgery clinic at Delano Regional Medical Center, plaintiff was taken back to CSP-Corcoran, and was advised by prison staff that 'no pain medication' was ordered by the doctor . . . . Plaintiff in turn questioned CSP-Corcoran's medical staff as to how to go about getting treatment for the pain and swelling he was experiencing, and to get medication [¶] to prevent any further infections from setting in on both surgery areas. And at that time plaintiff was advised that no medication was on order from Dr. Suesberry's office or otherwise.

(ECF No. 17, pp. 4, 7.)

Plaintiff also alleged:

On April 30, 2003 plaintiff was taken to Delano Regional Medical Center for a doctors visit with Dr. Suesberry to have stitches removed from his neck. Plaintiff asked Dr. Suesberry why he never ordered any pain medication, antibiotics, and medication to reduce swelling. His response was that 'medication should have been ordered the evening of the surgery, or the next morning. But he and his office failed to do so.'

(ECF No. 17, p. 7.)

Plaintiff also alleged:

On May 14, 2003 plaintiff . . . once again was taken to Dr. Suesberry office at Delano Regional Medical Center for an appointment to have the stitches and [gauze] removed from the area on [his] head, behind [his] right ear. And at that time plaintiff once again asked Dr. Suesberry as to why no medication was ever ordered after the surgery for pain, and to prevent swelling and infections? Dr. Suesberry stated that 'you were suppose[d] to have received something for at [least] 10 days from April 24th until May 4th or 5th. Also, plaintiff asked why was [his] head [gauze] sewn into [his] skin behind [his] head so that it could never [be] changed because it has been given off a foul odor, as well as bleeding and it couldn't be changed? The medical staff at CSP-Corcoran advised plaintiff that they couldn't take out the [gauze] due to no order coming from Dr. Suesberry's office in regard to changing the [gauze]. So by that time infection had already begun to set in and spread in the area on plaintiff's head. In Dr. Suesberry reply, he stated that 'sometimes it takes time with these things, this just happens to be one of those times, and I'm sure everything will be just fine.'

Plaintiff in turn advised Dr. Suesberry of the pain he was experiencing in the area on his head, behind his right ear, and in his neck area. Also, plaintiff advised Dr. Suesberry about the swelling and foul odor fluid and blood leaking from both areas. Dr. Suesberry said he would order something for the pain and some ointment for the leaking and some antibiotics for the infections. But after checking with the CSP-Corcoran's medical staff plaintiff discovered that no medication was ever ordered by Dr. Suesberry, nor by any of his staff . . . .

(ECF No. 17, pp. 7-8.)

Plaintiff further alleged:

For several months plaintiff complained to the CSP-Corcoran medical staff on the yard . . . about the pain he was experiencing, and showed them physically the swelling, bleeding, and fluid leaking from both the head and neck areas. And on June 27, 2003 plaintiff was seen by Dr. Greaves, who referred plaintiff back to Dr. Suesberry for a follow up appointment due to the start of a new reformation of the keloid on plaintiff's head, behind the right ear, and now the formation of a 'New' keloid on plaintiff's right front neck area where the skingraft was performed on plaintiff neck area. Dr. Greaves stated that, 'in his

3

opinion, the lack of after care was the result of the reformation of the first keloid, and now the new formation of the second keloid."

(ECF No. 17, pp. 8-9.)

Plaintiff additionally alleged:

Dr. Suesberry, after being made fully aware of the discomfort, pain, worsening condition of plaintiff, continued to move with deliberate indifference to plaintiff's medical needs. Because plaintiff was once again taken to Dr. Suesberry's office for an follow up appointment, but Dr. Suesberry only applied some sterile cream on plaintiff's head and neck [areas] and a couple of bandages and stated that, "everything will be all right, don't worry about it."

(ECF No. 17, p. 9.)

Plaintiff also alleged:

Several more months went by with plaintiff making numerous complaints . . . [a]s well as plaintiff being seen by Dr. Suesberry, in which he gave plaintiff a few shots of 'kenalog' a steroid compound to possibly help keep down the growth of the keloids. And being advised by Dr. Suesberry that an appointment had been scheduled . . . for plaintiff to be seen by an specialist in regards to having something done about the pain management and growth of the two keloids.

(ECF No. 17, pp. 10-11.)

**C. Discussion**

Defendant Suesberry moves for judgment on the pleadings pursuant to Rule 12(c), arguing that Plaintiff's claim is barred by the relevant statute of limitations. In response, Plaintiff contends that Defendant Suesberry's Rule 12 motion is untimely because he did not file it within the time-period prescribed by the waiver of service form. Contrary to Plaintiff's assertion, Defendant Suesberry's motion is not untimely. A Rule 12(c) motion may be filed after the pleadings are closed, but early enough not to delay trial. Fed. R. Civ. P. 12(c). In this instance, Defendant Suesberry filed an answer to Plaintiff's second amended complaint on July 23, 2014. Approximately two months later, after the pleadings were closed, and well before any anticipated trial date, Defendant Suesberry filed the instant motion pursuant to Rule 12(c). (ECF Nos. 101, 109.)

Plaintiff's remaining contentions relate to Defendant Suesberry's default, which was set aside by the Court, and the denial of Plaintiff's motion for default judgment. Plaintiff's apparent

4

1  disagreement with the Court's prior orders is not a sufficient ground to oppose the present motion for
2  judgment on the pleadings.
3       In his moving papers, Defendant Suesberry posits that Plaintiff's claim against him is time-
4  barred based on California's statute of limitations for actions involving professional negligence against
5  a health care provider, which is set forth in California Code of Civil Procedure section 340.5.
6  However, as section 1983 contains no specific statute of limitations, federal courts borrow state
7  statutes of limitations for personal injury actions in § 1983 suits. *See Wallace v. Kato*, 549 U.S. 384,
8  387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); *Lukovsky v. City of San Francisco*, 535 F.3d 1044, 1048
9  (9th Cir. 2008). In California, the statute of limitations for an action for a personal injury caused by
10 the wrongful or negligent act of another is two years from the date of accrual. Cal. Civ. Proc. Code §
11 335.1; *see also McGee v. Chamberlain*, 2014 WL 1028695, *2 (S.D. Cal. Mar. 13, 2014) (applying
12 two-year statute of limitations pursuant to Cal. Code Civ. Proc. § 335.1 to California prisoner's
13 allegations that he was denied adequate medical care); *Bradley v. Jameson*, 2013 WL 6504800, *2
14 (S.D. Cal. Dec. 10, 2013) (same); *Calloway v. Scribner*, 2013 WL 943229, *2 (E.D. Cal. Mar. 11,
15 2013) (applying two-year statute of limitations pursuant to Cal. Code Civ. Proc. § 335.1 to California
16 prisoner's allegations of deliberate indifference to a serious medical need in violation of the Eighth
17 Amendment). Federal courts also borrow all applicable provisions for tolling the limitations period
18 found in state law. *Wallace*, 549 U.S. at 387. California's statute of limitations may be tolled up to
19 two years for a prisoner's monetary damage claims. Cal. Code Civ. Proc. § 352.1.
20      Assuming application of the relevant tolling period, Plaintiff was required to bring his action
21 within four years from the date his cause of action accrued. Federal law determines when a cause of
22 action accrues and the statute of limitations begins to run for a § 1983 claim. *Lukovsky*, 535 F.3d at
23 1048. A federal claim accrues when the plaintiff knows or has reason to know of the injury which is
24 the basis of the action. *Id.* at 1051.
25      Plaintiff's claim against Defendant Suesberry concerns the failure to prescribe necessary
26 medications, which occurred while Plaintiff was housed at CSP-Corcoran. As noted above, Plaintiff
27 has not presented any substantive argument regarding the date when he reportedly discovered his
28 injuries. Based on Plaintiff's allegations, his injury occurred on April 24, 2003, when he returned

5

from surgery and was informed that Defendant Suesberry had not prescribed any medications for his pain and swelling or to prevent infection. (ECF No. 17, pp. 4, 7.) Nonetheless, construing the complaint in the light most favorable to Plaintiff, he had reason to know of the injury at the very latest as of May 14, 2003. On that date, Plaintiff complained of pain, swelling, leaking, bleeding and he had an infection on his head. At that time, Defendant Suesberry expressly informed Plaintiff that he should have received medications during the period from April 24 to May 4. Despite Defendant Suesberry's subsequent claim that he would order medications, Plaintiff discovered that no mediation was ordered. (ECF No. 17, pp. 7-8.) As Plaintiff's claim against Defendant Suesberry accrued, at the latest, on May 14, 2003, the two-year statute of limitations combined with the two-year tolling period expired on May 14, 2007. Plaintiff did not file this action until June 14, 2007. The Court therefore finds that Plaintiff's action against Defendant Suesberry is time-barred and will recommend that Defendant Suesberry's motion for judgment on the pleadings be granted.

### III.     Conclusion and Recommendation

For the reasons stated, it is HEREBY RECOMMENDED that Defendant Suesberry's motion for judgment on the pleadings be granted. Fed. R. Civ. P. 12(c).

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 22, 2015**                      /s/ *Barbara A. McAuliffe*
                                                         UNITED STATES MAGISTRATE JUDGE